MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

PEDRO M. RAMIREZ GIL, GUSTAVO
ADRIAN CRUZ LOPEZ, RENE PADILLA
VALDEZ and PATRICIO RAMOS GARCIA,
*individually and on behalf of others similarly*
*situated,*

                        *Plaintiffs*,

       -against-

367 BAKE CORP.  (D/B/A TASTY
CATERING), 126 BAKE CORP.  (D/B/A
TASTY CAFE), KAMAL KHADIR A.K.A.
KENNY, and SAMY EL FOULY,

                     *Defendants.*
-------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b)**

**ECF Case**

Plaintiffs Pedro M. Ramirez Gil, Gustavo Adrian Cruz Lopez, Rene Padilla Valdez  and

Patricio Ramos Garcia, individually and on behalf of others similarly situated (collectively,

"Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their

knowledge and belief, and as against 367 Bake Corp. (d/b/a Tasty Catering), 126 Bake Corp. (d/b/a

Tasty Cafe), ("Defendant Corporations"), Kamal Khadir a.k.a. Kenny and  Samy El Fouly,

("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are former employees of Defendants 367 Bake Corp. (d/b/a Tasty Catering),

126 Bake Corp. (d/b/a Tasty Cafe), Kamal Khadir a.k.a. Kenny, and Samy El Fouly.

2.      Defendants own, operate, or control two catering services, located at 367 1st Avenue, New York, NY 10010 under the name "Tasty Catering" and at 126 Madison Avenue, New York, NY 10016 under the name "Tasty Cafe".

3.      Upon information and belief, individual Defendants Kamal Khadir a.k.a. Kenny and Samy El Fouly, serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the catering services as a joint or unified enterprise.

4.      Plaintiffs were employed as delivery workers and as an assistant manager at the catering services located at 367 1st Avenue, New York, NY 10010 and 126 Madison Avenue, New York, NY 10016.

5.      Plaintiffs Ramirez, Cruz and Padilla were ostensibly employed as delivery workers. However, they were required to spend a considerable part of their work day performing non-tipped duties, including but not limited to cutting tomatoes and broccoli, peeling potatoes and carrots, sweeping and mopping the floors, and taking out cardboard boxes and the trash (hereafter the "non-tipped duties").

6.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

7.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.      Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

9.     Defendants employed and accounted for Plaintiffs Ramirez, Cruz and Padilla as delivery workers in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

10.     Regardless, at all relevant times, Defendants paid these Plaintiffs below the minimum wage rate.

11.     However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because these Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

12.     Upon information and belief, Defendants employed the policy and practice of disguising these Plaintiffs' actual duties in payroll records by designating them as delivery worker instead of non-tipped employees. This allowed Defendants to avoid paying these Plaintiffs at the minimum wage rate and enabled them to pay them at the tip-credit rate.

13.     In addition, Defendants maintained a policy and practice of unlawfully appropriating these Plaintiffs' and other tipped employees' tips and made unlawful deductions from these Plaintiffs' and other tipped employees' wages.

14.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

15.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

16.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of

1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

17.    Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

18.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

19.    Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a catering service located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

20.    Plaintiff Pedro M. Ramirez Gil ("Plaintiff Ramirez" or "Mr. Ramirez") is an adult individual residing in Bronx County, New York.

21.    Plaintiff Ramirez was employed by Defendants at Tasty Catering from approximately October 2015 until on or about September 2019.

22.     Plaintiff Gustavo Adrian Cruz Lopez ("Plaintiff Cruz" or "Mr. Cruz") is an adult individual residing in Bronx County, New York.

23.     Plaintiff Cruz was employed by Defendants at Tasty Catering from approximately March 2016 until on or about March 2020.

24.     Plaintiff Rene Padilla Valdez ("Plaintiff Padilla" or "Mr. Padilla") is an adult individual residing in Tulcingo del Valle County, Puebla.

25.     Plaintiff Padilla was employed by Defendants at Tasty Catering from approximately December 2017 until on or about June 2019.

26.     Plaintiff Patricio Ramos Garcia ("Plaintiff Ramos" or "Mr. Ramos") is an adult individual residing in Bronx County, New York.

27.     Plaintiff Ramos was employed by Defendants at Tasty Catering from approximately 2010 until on or about March 2020.

*Defendants*

28.     At all relevant times, Defendants owned, operated, or controlled two catering services, located at 367 1st Avenue, New York, NY 10010 under the name "Tasty Catering" and at 126 Madison Avenue, New York, NY 10016 under the name "Tasty Cafe".

29.     Upon information and belief, 367 Bake Corp. (d/b/a Tasty Catering) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 367 1st Avenue, New York, NY 10010.

30.     Upon information and belief, 126 Bake Corp. (d/b/a Tasty Cafe) was a domestic corporation organized and existed under the laws of the State of New York. Upon information and belief, it maintained its principal place of business at 126 Madison Avenue, New York, NY 10016.

31.     Defendant Kamal Khadir a.k.a. Kenny is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Kamal Khadir a.k.a. Kenny is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Kamal Khadir a.k.a. Kenny possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

32.     Defendant Samy El Fouly is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Samy El Fouly is sued individually in his capacity as a manager of Defendant Corporation. Defendant Samy El Fouly possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## **FACTUAL ALLEGATIONS**

*Defendants Constitute Joint Employers*

33.     Defendants operate two catering services located in multiple neighborhoods in Manhattan.

34.     Individual Defendants, Kamal Khadir a.k.a. Kenny and Samy El Fouly, possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, and control significant functions of Defendant Corporations.

35.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

36.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

37.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

38.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

39.     Upon information and belief, Individual Defendant Kamal Khadir a.k.a. Kenny operates Defendant Corporation as either alter egos of  himself and/or failed to operate Defendant Corporations as entities legally separate and apart from himself, by among other things:

a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

b)  defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)  transferring assets and debts freely as between himself and the Corporations,

d)  operating Defendant Corporations for his own benefit as the sole or majority shareholder,

e)  operating Defendant Corporations for his own benefit and maintaining control over these corporations as closed Corporations,

f)   intermingling assets and debts of his own with Defendant Corporations,

g)   diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect his own interests, and

h)   Other actions evincing a failure to adhere to the corporate form.

40.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

41.     In each year from 2015 to 2019, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

42.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the catering services on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

43.     Plaintiffs are former employees of Defendants who were employed as assistant manager and ostensibly as delivery workers. However, the delivery workers  spent over 20% of each shift performing the non-tipped duties described above.

44.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Pedro M. Ramirez Gil*

45.     Plaintiff Ramirez was employed by Defendants from approximately October 2015 until on or about September 2019.

46.     Defendants ostensibly employed Plaintiff Ramirez as a delivery worker.

47.     However, Plaintiff Ramirez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

48.     Although Plaintiff Ramirez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

49.     Plaintiff Ramirez regularly handled goods in interstate commerce, such as catering service and other supplies produced outside the State of New York.

50.     Plaintiff Ramirez's work duties required neither discretion nor independent judgment.

51.     Throughout his employment with Defendants, Plaintiff Ramirez regularly worked in excess of 40 hours per week.

52.     From approximately October 2015 until on or about December 2017, Plaintiff Ramirez worked from approximately 5:00 a.m. until on or about 2:00 p.m. to 2:30 p.m., 5 days a week (typically 45 to 47 hours per week).

53.     From approximately January 2018 until on or about September 2019, Plaintiff Ramirez worked from approximately 6:00 a.m. until on or about 2:00 p.m. to 2:30 p.m., 4 days a week (typically 28 to 30 hours per week).

54.     From approximately October 2015 until on or about September 2019, Defendants required Plaintiff Ramirez to stay 3 hours past his scheduled hours every six months.

55.     Throughout his employment, Defendants paid Plaintiff Ramirez his wages by check.

56.     From approximately October 2015 until on or about December 2015, Defendants paid Plaintiff Ramirez $5.65 per hour.

57.    From approximately January 2016 until on or about February 2016, Defendants paid Plaintiff Ramirez $7.50 per hour.

58.    From approximately March 2016 until on or about May 2017, Defendants paid Plaintiff Ramirez $9.00 per hour.

59.    From approximately June 2017 until on or about December 2017, Defendants paid Plaintiff Ramirez $11.00 per hour.

60.    From approximately January 2018 until on or about December 2018, Defendants paid Plaintiff Ramirez $13.00 per hour.

61.    From approximately January 2019 until on or about September 2019, Defendants paid Plaintiff Ramirez $15.00 per hour.

62.    Plaintiff Ramirez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

63.    For example, Defendants required Plaintiff Ramirez to work 30 minutes past his scheduled departure time two times a week, and did not pay him for the additional time he worked.

64.    Plaintiff Ramirez was never notified by Defendants that his tips were being included as an offset for wages.

65.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Ramirez's wages.

66.    Defendants withheld a portion of Plaintiff Ramirez's tips.

67.    Specifically, Defendants only gave Plaintiff Ramirez $10.00 in tips for Seamless or Grub Hub deliveries regardless of the tip amounts the clients would enter in the orders.

68.     In addition, Defendants withheld most of the tips from catering events, and thus Plaintiff Ramirez would lose approximately 90% of the tips in large catering orders.

69.     Furthermore, Defendants would arbitrarily change the language in the pay slips from "gratuities" to "service fee" and keep the tips.

70.     Defendants did not provide Plaintiff Ramirez an accurate statement of wages, as required by NYLL 195(3).

71.     In addition, Defendants required Plaintiff Ramirez to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

72.     Defendants did not give any notice to Plaintiff Ramirez, in English and in Spanish (Plaintiff Ramirez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Gustavo Adrian Cruz Lopez*

73.     Plaintiff Cruz was employed by Defendants from approximately March 10, 2016 until on or about March 2020.

74.     Defendants ostensibly employed Plaintiff Cruz as a delivery worker.

75.     However, Plaintiff Cruz was also required to spend a significant portion of his work day performing the non-tipped duties described above.

76.     Although Plaintiff Cruz ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

77.     Plaintiff Cruz regularly handled goods in interstate commerce, such as catering service and other supplies produced outside the State of New York.

78.     Plaintiff Cruz's work duties required neither discretion nor independent judgment.

79.     From approximately March 10, 2016 until on or about February 2018, Plaintiff Cruz worked from approximately 10:00 a.m. until on or about 6:00 p.m. Mondays through Saturdays (typically 48 hours per week).

80.     From approximately March 2018 until on or about December 2018, Plaintiff Cruz worked from approximately 10:00 a.m. until on or about 6:00 p.m. Mondays through Fridays (typically 40 hours per week).

81.     From approximately January 2019 until on or about December 2019, Plaintiff Cruz worked from approximately 10:00 a.m. until on or about 6:00 p.m. four days a week (typically 32 hours per week).

82.     From approximately January 2020 until on or about March 2020, Plaintiff Cruz worked from approximately 10:00 a.m. until on or about 6:00 p.m. 3 days a week (typically 24 hours per week).

83.     From approximately March 2018 until on or about August 2019, Defendants required Plaintiff Cruz to start working 2 to 4 hours prior to his scheduled start time and to continue  working 1 to 3 hours past his scheduled departure time.

84.     From approximately March 2016 until on or about February 2018, Defendants paid Plaintiff Cruz his wages in cash.

85.     From approximately March 2018 until on or about March 2020, Defendants paid Plaintiff Cruz his wages by check.

86.     From approximately March 2016 until on or about December 2017, Defendants paid Plaintiff Cruz $9.00 per hour for the first 40 hours and $13.50 for some of the hours over 40 in a week.

87.     From approximately January 2018 until on or about December 2018, Defendants paid Plaintiff Cruz $13.00 per hour for the first 40 hours and $19.00 for some of his hours over 40 in a week.

88.     From approximately January 2019 until on or about March 2020, Defendants paid Plaintiff Cruz $15.00 per hour for the first 40 hours and $22.50 for some of the hours over 40 in a week.

89.     Plaintiff Cruz's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

90.     For example, Defendants required Plaintiff Cruz to start working 2 to 4 hours prior to his scheduled start time and to work 1 to 3 hours past his scheduled departure time every day for extended periods of time, and did not pay him for the additional time he worked.

91.     Although Defendants granted Plaintiff Cruz 30-minute meal breaks, at least three times a week they interrupted these breaks to require Plaintiff Cruz to perform his work duties.

92.     Plaintiff Cruz was never notified by Defendants that his tips were being included as an offset for wages.

93.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Cruz's wages.

94.     Defendants withheld a portion of Plaintiff Cruz's tips.

95.     Specifically, Defendants only gave Plaintiff Cruz $10.00 in tips for Seamless or Grub Hub deliveries regardless of the tip amounts the clients would enter in the orders.

96.     In addition, Defendants withheld most of the tips from catering events, and thus Plaintiff Cruz would lose $500 to $3000 in tips in large catering orders.

97.     Furthermore, Defendants would arbitrarily change the language in the pay slips from "gratuities" to "service fee" and keep the tips.

98.     Plaintiff Cruz was required to keep track of his time, but Defendant's time-keeping system required him to record fewer hours than he actually worked.

99.    Specifically, Defendant's time keeping system would not reflect Plaintiff Cruz's early arrivals.

100.    Similarly, from approximately March 2018 until on or about March 2020, the system would not reflect Plaintiff Cruz's actual departure times.

101.    As a result, Plaintiff Cruz was not compensated for all of the hours that he worked.

102.    In addition, Defendants required Plaintiff Cruz to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

103.    On a number of occasions, Defendants required Plaintiff Cruz to sign a document, the contents of which he was not allowed to review in detail.

104.    Defendants took improper and illegal deductions from Plaintiff Cruz's wages; specifically, Defendants deducted approximately $30 to $100 from Plaintiff Cruz's wages for late arrival or errors on food orders.

105.    Defendants did not provide Plaintiff Cruz an accurate statement of wages, as required by NYLL 195(3).

106.    Defendants did not give any notice to Plaintiff Cruz, in English and in Spanish (Plaintiff Cruz's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Rene Padilla Valdez*

107.    Plaintiff Padilla was employed by Defendants from approximately December 2017 until on or about June 2019.

108.    Defendants ostensibly employed Plaintiff Padilla as a delivery worker.

109.    However, Plaintiff Padilla was also required to spend a significant portion of his work day performing the non-tipped duties described above.

110.    Although Plaintiff Padilla ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

111.    Plaintiff Padilla regularly handled goods in interstate commerce, such as catering service and other supplies produced outside the State of New York.

112.    Plaintiff Padilla's work duties required neither discretion nor independent judgment.

113.    Throughout his employment with Defendants, Plaintiff Padilla regularly worked in excess of 40 hours per week.

114.    From approximately December 2017 until on or about January 2018, Plaintiff Padilla worked from approximately 6:00 a.m. until on or about 4:00 p.m., Mondays through Fridays (typically 50 hours per week).

115.    From approximately February 2018 until on or about March 2018, Plaintiff Padilla worked from approximately 9:00 a.m. until on or about 6:30 p.m., Mondays through Fridays (typically 42.5 hours per week).

116.    From approximately April 2018 until on or about June 2019, Plaintiff Padilla worked from approximately 6:00 a.m. until on or about 4:00 p.m., 2 days a week, from approximately 5:00 a.m. until on or about 4:00 p.m., 2 days a week, and from approximately 4:00 a.m. until on or about 4:00 p.m., 1 day a week (typically 51 hours per week).

117.    Throughout his employment, Defendants paid Plaintiff Padilla his wages by check.

118.    From approximately December 1, 2017 until on or about December 31, 2017, Defendants paid Plaintiff Padilla $9.00 per hour worked up to 40 hours and $13.50 for some of the hours worked in excess of 40 hours per week.

119.     From approximately January 2018 until on or about December 2018, Defendants paid Plaintiff Padilla $13.50 per hour and $20.25 for some of the hours worked in excess of 40 hours per week.

120.     From approximately January 2019 until on or about June 2019, Defendants paid Plaintiff Padilla $15.00 per hour and $22.50 for some of the hours worked in excess of 40 hours per week.

121.     Defendants required Plaintiff Padilla to start working  one hour prior to his scheduled start time  2 days a week and two hours prior to his scheduled start time 2 days a week, and did not pay him the appropriate rate for the additional time he worked.

122.     Similarly, Defendants required Plaintiff Padilla to continue working 30 minutes past his scheduled stop time (6pm), and did not pay him the appropriate rate for the additional time he worked.

123.     Defendants never granted Plaintiff Padilla any breaks or meal periods of any kind.

124.     Plaintiff Padilla was never notified by Defendants that his tips were being included as an offset for wages.

125.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Padilla's wages.

126.     Defendants withheld a portion of Plaintiff Padilla's tips.

127.      Specifically, Defendants withheld most of  the tips customers paid in large catering orders.

128.     Furthermore, Defendants required Plaintiff Padilla to share his tips with cooks, dishwashers, salad preparers and other non-tipped workers.

129.    Similarly, Defendants withheld at least $50 of the tips customers wrote in for Plaintiff Padilla each week.

130.    Plaintiff Padilla was required to keep track of his time, but Defendant's time-keeping system recorded fewer hours than he actually worked.

131.    Specifically, Defendant's time keeping system would not reflect Plaintiff Padilla's early arrivals.

132.    In addition, from approximately January 2019 until on or about June 2019, the system only would reflect Plaintiff Padilla's scheduled hours instead of his actual start and stop times.

133.    As a result, Plaintiff Padilla was not compensated for all of the hours that he worked.

134.    In addition, Defendants required Plaintiff Padilla to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

135.    On a number of occasions, Defendants required Plaintiff Padilla to sign a document, the contents of which he was not allowed to review in detail.

136.    Defendants did not provide Plaintiff Padilla an accurate statement of wages, as required by NYLL 195(3).

137.    Defendants did not give any notice to Plaintiff Padilla, in English and in Spanish (Plaintiff Padilla's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Patricio Ramos*

138.    Plaintiff Ramos was employed by Defendants from approximately 2010 until on or about March 2020.

139.    Defendants employed Plaintiff Ramos as an assistant manager.

140.    Plaintiff Ramos regularly handled goods in interstate commerce, such as catering service and other supplies produced outside the State of New York.

141.    Plaintiff Ramos's work duties required neither discretion nor independent judgment.

142.    Throughout his employment with Defendants, Plaintiff Ramos regularly worked in excess of 40 hours per week.

143.    From approximately June 2015 until on or about December 2016, Plaintiff Ramos worked from approximately 5:00 a.m. until on or about 5:00 p.m. 5 days a week (typically 60 hours per week).

144.    From approximately January 2017 until on or about March 2020, Plaintiff Ramos worked from approximately 5:00 a.m. until on or about 3:00 p.m. five days a week (typically 40 hours per week).

145.    Throughout his employment, Defendants paid Plaintiff Ramos his wages by check.

146.    From approximately June 2015 until on or about December 2017, Defendants paid Plaintiff Ramos $15.00 per hour and time and a half for the overtime hours.

147.    From approximately January 2018 until on or about March 2020, Defendants paid Plaintiff Ramos $16.00 per hour and time and a half for some of the overtime hours.

148.    Defendants owe Plaintiff Ramos $21,616 in wages because Defendants provided him paychecks with no funds, and they have refused to pay Plaintiff Ramos these funds.

149.    Plaintiff Ramos was never notified by Defendants that his tips were being included as an offset for wages.

150.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Ramos's wages.

151.    Defendants withheld a portion of Plaintiff Ramos's tips.

152.     Specifically, Defendants charged clients 10% of the orders as a setup fee and kept the entire amount.

153.     Defendants did not provide Plaintiff Ramos an accurate statement of wages, as required by NYLL 195(3).

154.     In addition, Defendants required Plaintiff Ramos to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

155.     On a number of occasions, Defendants required Plaintiff Ramos to sign a document, the contents of which he was not allowed to review in detail.

156.     Defendants did not give any notice to Plaintiff Ramos, in English and in Spanish (Plaintiff Ramos's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Defendants' General Employment Practices*

157.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

158.     Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

159.     Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

160.     Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with the correct compensation.

161.     Defendants required Plaintiffs Ramirez, Cruz and Padilla and all other delivery worker to perform general non-tipped tasks in addition to their primary duties as delivery workers.

162.     These Plaintiffs and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

163.      These Plaintiffs' duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general catering service work with duties, including the non-tipped duties described above.

164.     These Plaintiffs and all other tipped workers were paid below the minimum wage rate by Defendants.

165.     However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and these Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

166.     New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4).

167.     Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

168.     In violation of federal and state law as codified above, Defendants classified these Plaintiffs and other tipped workers as tipped employees, and paid them at a rate that was at the

lowered tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

169.     Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

170.     Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

171.     Defendants failed to maintain a record of tips earned by Plaintiffs who worked as delivery workers for the tips they received. Defendants' time keeping system did not reflect the actual hours that Plaintiffs worked.

172.     As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs who received tips, by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving delivery workers of a portion of the tips earned during the course of employment.

173.     Defendants unlawfully misappropriated charges purported to be gratuities received by tipped Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

174.     Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive or forgo the tip credit or pay them the full hourly minimum wage.

175.     Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

176.    On a number of occasions, Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail.

177.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

178.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

179.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

180.    Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

181.    Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the

employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

182. Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

183. At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

184. The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

185. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

186. At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

187.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

188.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

189.     Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

190.     Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

191.     Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

192.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

193.     Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

194.     Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

195.     Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

196.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

197.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

198.     Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

199.     Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

200.     Plaintiffs were damaged in an amount to be determined at trial.

<u>**FOURTH CAUSE OF ACTION**</u>

**VIOLATION OF THE OVERTIME PROVISIONS**

**OF THE NEW YORK STATE LABOR LAW**

201.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

202.     Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

203.     Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

204.     Plaintiffs were damaged in an amount to be determined at trial.

<u>**FIFTH CAUSE OF ACTION**</u>

**VIOLATION OF THE SPREAD OF HOURS WAGE ORDER**

**OF THE NEW YORK COMMISSIONER OF LABOR**

205.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

206.     Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq.* and 12 N.Y.C.R.R. §§ 146-1.6.

207.     Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

208.     Plaintiffs were damaged in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**

**VIOLATION OF THE NOTICE AND RECORDKEEPING**

**REQUIREMENTS OF THE NEW YORK LABOR LAW**

209.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

210.     Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

211.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

**SEVENTH CAUSE OF ACTION**

**VIOLATION OF THE WAGE STATEMENT PROVISIONS**

**OF THE NEW YORK LABOR LAW**

212.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

213.     With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

214.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION

## OF THE NEW YORK LABOR LAW

215.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

216.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

217.     New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

218.     Defendants unlawfully misappropriated a portion of Plaintiffs' tips that were received from customers.

219.    Defendants knowingly and intentionally retained a portion of Plaintiffs' tips in violations of the NYLL and supporting Department of Labor Regulations.

Plaintiffs were damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)    Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)    Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)    Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount

equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(l)     Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs;

(m)     Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(n)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p)      Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(q)      Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(r)      Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)      All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York

June 25, 2021

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:      _____/s/ Michael Faillace_____
Michael Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.
## Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

December 19, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Pedro M. Ramirez-Gil

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                              19 de diciembre 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 14, 2020

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                  Gustavo Adrian Cruz Lopez

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                   14 de septiembre 2020

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

January 21, 2020

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                     Rene Padilla Valdez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      21 de Enero 2020

Certified as a minority-owned business in the State of New York

# MICHAEL FAILLACE & ASSOCIATES, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

———

Faillace@employmentcompliance.com

May 26, 2021

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Patricio Ramos Garcia
Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                           26 mayo 2021

*Certified as a minority-owned business in the State of New York.*